Defendant-Appellant Norman W. Noel appeals the July 27, 1998, Judgment Entry of the Stark County Court of Common Pleas overruling his objections to the Magistrate's Decision of June 29, 1998.
 STATEMENT OF THE FACTS AND CASE
Defendant-Appellant Norman W. Noel is the owner of Market Ridge Apartments, a complex consisting of 114 apartment suites. From the time he purchased the complex in approximately 1970 until November, 1996, appellant managed the complex, which consists of both one (1) and two (2) bedroom apartments.
During the Spring of 1996, James Burrows, the husband of Sara Burrows, the resident manager at Market Ridge Apartments, was arrested for rape and gross sexual imposition of two residents, one who has Down's Syndrome and the other who is mildly retarded. Burrows subsequently pled guilty to reduced charges and was ordered to stay off of the apartment premises. Because of the "stigmatization" of the property and the decline in occupancy that was, in part, due to the same, appellant contacted John Vodopich regarding taking over management of the property. On or about October 8, 1996, after viewing the property and speaking with Sara Burrows, Vodopich, as general manager for appellee Fitzpatrick Realty, LTD, a real property management company, sent appellant a proposal for management of the apartment complex. Vodopich, in the proposal, suggested certain steps that should be taken to change the image of the property, including new advertisements and signage, in order to achieve appellant's objectives. Such objectives included raising the occupancy level, refinancing the property in February of 1997, and generating positive cash flow. Vodopich further noted that while the property appeared to be in good condition, there was some deferred maintenance that needed to be done. At the time of the proposal, appellant had advised appellee that there were 35 vacancies.
As a result of the proposal, on or about November 12, 1996, appellant and appellee entered into a one year management agreement pursuant to which appellee agreed to rent and manage the property commencing on November 1, 1996. At the time appellee took over management, the number of vacancies had increased to 43. The agreement provided that appellant was to pay appellee five percent (5%) of the monthly gross receipts as a management fee and a $100.00 commission for each unit leased. Pursuant to the terms of the agreement, appellant was also to reimburse appellee for any monies expended by appellee for maintenance of the property. Appellee, however, did not collect rents and was not involved in the financial aspects of the management
Appellee managed the property until June of 1997, when a receiver was appointed by Judge Richard Reinbold in a foreclosure case, case number 1997CV01856 (Federal NationalMortgage Association v. Norman Noel). The receiver, after her appointment, retained appellee as the managing firm for the apartment complex. At such time, there were 54 vacancies as well as serious delinquencies in the payment of utility bills, including water, trash pick up, electric and gas.
On September 16, 1997, appellee filed a complaint in the Stark County Court of Common Pleas against appellant, alleging that there was due and owing to appellee from appellant the sum of $21,410.14 for maintenance, commissions and on-site manager salaries and that appellant refused to pay the same. Thereafter, appellant, on October 21, 1997, filed an Answer and Counterclaim. Appellant in his counterclaim, alleged that appellee breached its contract with appellant by failing to manage the premises in a professional and competent manner and that, due to appellee's actions and omissions, the market value of the property had declined by approximately $600,000.00. Appellee filed an Answer to the Counterclaim on November 14, 1997.
A trial before Magistrate Janel Myers Newell was held on May 6 and 7, 1998. On June 29, 1998, Magistrate Newell filed a decision in which she concluded that appellant owed appellee a total of $19,134.26 for appellant's breach of contract claim and that appellant had failed to prove that appellee was negligent in the management of the property and/or that appellee breached its contract with appellant. Both parties timely filed written Findings of Fact and Conclusions of Law. Appellant on July 10, 1998, filed objections to the Magistrate's Decision. However, the trial court, on July 27, 1998, denied appellant's objections and issued a final appealable order.
It is from such order that appellant now appeals, raising the following assignments of error.
I
 THE UNDISPUTED EVIDENCE WAS THAT THE MARKET VALUE OF THE SUBJECT PROPERTY WAS DETERMINED BY ITS NET OPERATING INCOME; WHICH IN TURN WAS DICTATED BY THE PERCENTAGE OF APARTMENTS IN THE COMPLEX WHICH WERE RENTED. RENTAL OF THE APARTMENTS WAS AN OBLIGATION OF THE PLAINTIFF, IN WHICH OBLIGATION IT FAILED. THE COURT ACCORDINGLY ERRED IN NOT ARRIVING AT THE INDICATED CONCLUSION THAT THE PLAINTIFF BREACHED ITS PROPERTY MANAGEMENT AGREEMENT BY PERFORMING INCOMPETENTLY AND IS THEREFORE LIABLE FOR THE DIMINUTION IN THE VALUE OF THE PROPERTY.
II
 THE EVIDENCE DOES NOT SUPPORT THE TRIAL COURT'S CONCLUSION THAT THE PLAINTIFF PERFORMED IN A WORKMANLIKE, COMPETENT MANNER IN THE MANAGEMENT OF THE PROPERTY AND THEREFORE ERRED IN NOT FINDING LIABILITY FOR THE RESULTING DIMINUTION IN PROPERTY VALUE
 I, II
Since both of appellant's assignments of error concern whether there was competent credible evidence to support the trial court's conclusion that appellant failed to sustain his burden of proof on his counterclaim, the two assignments of error shall be addressed together.
We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck vJeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. V. Foley Construction (1978), 54 Ohio St.2d 279.
Appellant, in support of his assignments of error, argues that the diminution in the value of his property was directly caused by appellee's failure to perform the terms of the property management agreement in a competent and workmanlike manner. Appellant specifically contends that appellee breached the management agreement by:
 a. Failing to employ an appropriate variety of advertising media.
 b. Failure to advertise in newspaper other than The Repository.
 c. Failure to establish an on-site model and leasing office.
d. Failure to maintain an on-site leasing agent.
 e. Failure to apply for available rental increases from SMHA
 f. Failure to provide an "experienced team" to achieve an increase in rental.
 g. Failure to be responsive to evening and weekend leasing requirements.
 h. Failure to provide appropriate means by which a prospective tenant could contact a leasing agent.
 i. Failure to perform any market survey of rentals for the purpose of determining whether the rentals for the apartment units should be adjusted either upward or downward.
Such failures, according to appellant, resulted in a decline in the occupancy rate and, as testified to by appellant's experts, an accompanying decline in the fair market value of the property. While appellant sold the property for $2,242,351.00, he argues that if the property had achieved a market average occupancy, its value would have been $3,290,000.00.
However, the Magistrate, in her decision which was adopted by the trial court, found that appellant had failed to sustain his burden of proving that appellee was negligent in the management of the property and/or that appellee had breached its obligation under the management contract. The Magistrate, rather, found that appellee had "reasonably performed [its] job as manager based upon the resources that were made available to [it] by [appellant]." This court finds that there was competent, credible evidence supporting the trial court's decision. The record reveals that at the time appellant took over management of the property, the rental income was barely covering the $25,363.00 mortgage payments, leaving little money to cover other expenses relating to the operation and maintenance of the property. Appellant's rental income report for November of 1996, indicated total collected rental payments in the amount of $25,689.65. The property also was stigmatized by the felony conviction of the resident manager's husband for sex offenses.
As evidenced by the October 8, 1996, letter from Vodopich to appellant, appellant was to refinance the property in February of 1997, and use the capital generated from the refinancing together with money from the sale of parking lots owned by appellant to perform deferred maintenance. However, since appellant failed to do so, appellee lacked financial resources to perform needed maintenance. Moreover, the fact that appellee was not provided with capital resources to properly manage the property was further exacerbated by the fact that appellee was not paid the maintenance fee for the month of January of 1997, until April of 1997, and the fee for the month of February of 1997, until June of 1997. When the receiver was appointed in late June — early July of the same year, the property had long term maintenance problems. The hallways needed painting and the common areas were "kind of run down". Transcript of Proceedings, at 324. As the Magistrate noted in her decision, the [p]roperty was undercapitalized and [appellee] was not required to finance the property in order to increase rentals." Furthermore, while appellant has cited a laundry list of appellee's alleged failures in managing the property, those claims of failure were either unsupported by the evidence or those failures, such as appellee's alleged failure to maintain an on-site leasing office and to advertise more extensively, were directly tied to the lack of operating capital.
Since the final judgment of the Stark County Court of Common Pleas is supported by competent, credible evidence, and is not against the manifest weight of the evidence, both of appellant's assignments of error are overruled.
The judgment of the Stark County Court of Common Pleas is affirmed.
By Julie Edwards, J., Wise, P, J. and Hoffman, J. concur
--------------------
--------------------
 -------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is hereby affirmed. Costs to appellant.
--------------------
--------------------
 -------------------- JUDGES